# The Burlington Free Press v. University of Vermont

[779 A.2d 60]

No. 00-260

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed June 29, 2001

*Philip H. White* of *Wilson & White, P.C.*, Montpelier, for Plaintiff-Appellant.

*Jeffrey J. Nolan* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellee.

**Skoglund, J.** The Burlington Free Press (BFP) appeals the superior court's denial of its request for approximately $8000 in expenses and attorney's fees incurred in its lawsuit seeking the release of documents related to hazing incidents that took place at the University of Vermont (UVM). We affirm based on our conclusion that BFP has failed to demonstrate that the court abused its discretion in declining to award attorney's fees in this case.

Beginning in the fall of 1999, UVM officials became aware of hazing on its hockey team and took certain steps to deal with it. In response to an October 28 written complaint submitted by an attorney representing a member of the team, UVM initiated a formal investigation to be conducted by a local law firm. On November 11, BFP asked UVM to release certain documents that would reveal both the nature of the hazing allegations and UVM's response to those allegations. UVM refused, and on December 7, BFP filed an action in the superior court seeking an injunction that would require UVM to release the documents pursuant to the Public Records Act. See 1 V.S.A. §§ 315-320.

Following a December 10 hearing, the superior court reviewed the pertinent documents in camera and issued a December 16 decision on BFP's request for a preliminary injunction. Based on its in camera review, the court ordered disclosure of documents that merely detailed UVM's response to the formal complaint but that did not reveal any identifying information about the students that might violate the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g. The court also noted that nothing new would be revealed by disclosing the details of the hockey player's written complaint because they had already been disclosed in the federal lawsuit and widely reported in the media. The court concluded that, by filing the federal court action, the complaining hockey player had abandoned any protection of his identity to which he might have been entitled under FERPA.

The court declined, however, to order disclosure of the transcripts and notes of statements made by members of the hockey team to UVM investigators. In the court's view, those documents were student

records protected by FERPA. The court ordered the release of other documents requested by BFP, but required that individual names be redacted to protect the students' privacy. Neither party sought to appeal the court's ruling, and on January 4, 2000, UVM complied with the court's orders.

After the release of the documents, BFP sought to recover approximately $8000 in expenses and attorney's fees incurred in its lawsuit against UVM. On May 10, 2000, the court issued a ruling denying the request in its entirety. In so ruling, the court stated as follows:

> Finally, there is the question of attorney's fees. The briefing on this issue is well done and interesting. In the end, however, it comes down to the court's discretion. True, the desired results required the litigation, otherwise they would not have been achieved. Yet the opposition was not without some merit. An opposition to production was probably advisable, at least to avoid the appearance of irresponsible disclosure, which might have led to certain legally or financially adverse consequences. I conclude that in the end the just result is to put this litigation down to the cost of doing business, and there should be no award of attorney's fees in this case.

(Citation omitted.) BFP appeals this ruling, arguing that the superior court abused its discretion by failing to give adequate consideration to the policies behind the Public Records Act and the relevant criteria, as reflected by federal court decisions addressing the award of attorney's fees under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(4)(E).

The relevant provision of the Public Records Act provides that:

> The court may assess against the public agency reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

1 V.S.A. § 319(d). This provision requires the requesting party to make a threshold showing that it is *eligible* for attorney's fees because it substantially prevailed in its lawsuit seeking the release of public records. Federal courts construing a nearly identical attorney's fees provision in the FOIA have held that, to establish eligibility, the requesting party must prove that legal action could reasonably be regarded as necessary to obtain the requested documents, and that in fact the litigation had a substantial causative effect on the release of the docu-

ments. E.g., *Chesapeake Bay Found. v. United States Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993); *Abernethy v. I.R.S.*, 909 F. Supp. 1562, 1567 (N.D. Ga. 1995).

Once eligibility is proved, the requesting party still has the burden of demonstrating that it is *entitled* to the fees. *Chesapeake Bay Found.*, 11 F.3d at 216 ("Eligibility for fees does not guarantee entitlement."); *Abernethy*, 909 F. Supp. at 1567 (award of fees does not automatically follow finding of eligibility; burden is on requesting party to establish entitlement). Among the factors examined by federal courts in considering requests for attorney's fees under the FOIA are (1) the public benefit derived by the lawsuit; (2) the commercial benefit the requesting party will receive from release of the requested documents; (3) the nature of the requesting party's interest in the documents; and (4) whether the public agency had a reasonable basis for withholding the documents. See *Chesapeake Bay Found.*, 11 F.3d at 216; *Abernethy*, 909 F. Supp. at 1568; see also *Kline v. Fuller*, 496 A.2d 325, 330, 332 (Md. Ct. Spec. App. 1985) (remanding matter for trial court to consider FOIA factors before determining whether to award attorney's fees under Maryland's Public Information Act).

These four factors were initially proposed as part of the FOIA provision on attorney's fees, but were eliminated before the provision became law because they were considered to be unnecessary and too delimiting. *Kline*, 496 A.2d at 330-31; see *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 714 (D.C. Cir. 1977) (Congress's express intention in removing four factors from statutory language was to avoid limiting court's consideration of other relevant factors; courts should not frustrate that intent by failing to consider other relevant factors). Nevertheless, the federal courts continue to consider these factors along with any other relevant factors in determining entitlement to attorney's fees under the FOIA. E.g., *Detroit Free Press, Inc. v. Dep't of Justice*, 73 F.3d 93, 98 (6th Cir. 1996); *Chicago Tribune Co. v. United States Dep't of Health & Human Servs.*, 70 F. Supp. 2d 832, 835 (N.D. Ill. 1998); see also *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509, 513 (2d Cir. 1976) (by eliminating four factors from statute, Congress did not intend to preclude courts from considering them).

■ Section 319(d) of the Vermont Public Records Act does not include any specific factors for the trial court to consider in determining whether a party is entitled to attorney's fees. 1 V.S.A. § 319(d). We decline to expressly adopt the federal factors, but rather acknowledge that they may be considered along with any other relevant factors. On

appeal from the trial court's discretionary ruling on attorney's fees, "a party must show that the court failed to exercise its discretion or that its discretion was exercised for reasons clearly untenable or to an extent clearly unreasonable." *Animal Legal Def. Fund, Inc. v. Institutional Animal Care & Use Comm.*, 159 Vt. 133, 140, 616 A.2d 224, 228 (1992).

In determining whether BFP has met this burden, we first consider whether BFP substantially prevailed in its lawsuit and thus was eligible for an award of attorney's fees. BFP contends that it plainly overcame this threshold hurdle, as evidenced by the superior court's statement that "the desired results required the litigation, otherwise they would not have been achieved." To be sure, this statement suggests that the instant lawsuit was necessary to obtain the requested documents, and that the documents would not have been obtained without the litigation. But the statement is inconsistent, at least to some extent, with findings made by the court in its decision on the merits of the lawsuit. As the court indicated in its December 16 ruling, much of the information BFP sought concerning the nature of the hazing allegations became available after the complaining hockey player filed a federal lawsuit against UVM. That lawsuit was filed before the court ordered the release of any documents. Further, the court declined to allow the release of some of the requested documents, including transcripts of interviews of hockey players conducted by UVM investigators. Given these facts, it is a close question as to whether BFP substantially prevailed in this lawsuit. Cf. *Exner v. FBI*, 443 F. Supp. 1349, 1354 (S.D. Cal. 1978) (requesting party need not receive all requested documents to substantially prevail in FOIA lawsuit).

Nevertheless, because of the superior court's statement indicating its belief that BFP's lawsuit was necessary for release of the documents, we accept BFP's position that it met the threshold test, thereby requiring us to consider whether BFP is entitled to attorney's fees. As we held above, examination of the four FOIA factors, although potentially helpful, is not required when litigants seek attorney's fees under Vermont's Public Records Act. BFP argues that the trial court abused its discretion by disregarding the fundamental purpose behind the Act's attorney's fee provision, and that the court's failure to apply the FOIA factors demonstrates the court's mistaken understanding of that purpose, which is to assure that legal fees are not a financial barrier to those seeking legitimate access to public records.

With respect to the FOIA factors, BFP asserts that (1) the public benefit stemming from its lawsuit — increased awareness and re-

sponse to hazing within Vermont educational institutions — is significant; (2) as a news organization, its primary purpose in seeking the requested documents must be regarded as public-interest oriented rather than commercially oriented, see *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1096 (D.C. Cir. 1992) (if newspapers had to show absence of commercial interests before they could win attorney's fees in FOIA cases, very few, if any, could prevail); *Des Moines Register v. United States Dep't of Justice*, 563 F. Supp. 82, 84 (D.D.C. 1983) (when newspaper seeks information to produce significant newspaper article, its interest is journalistic rather than commercial); and (3) UVM objected to the release of documents critical to BFP's investigation primarily to avoid embarrassment over its handling of the hazing incidents rather than to protect the privacy interests of its students. In BFP's view, consideration of these factors in light of the required liberal construction of the Public Records Acts should have compelled the superior court to grant its request for attorney's fees. See 1 V.S.A. § 315 (provisions of Public Records Act "shall be liberally construed with the view towards carrying out" its stated public purposes).

We do not find these arguments persuasive. There is little doubt that BFP's articles helped draw public attention to the problem of hazing within educational institutions, and that the exposure to this problem led to important changes in some of those institutions with respect to how hazing incidents would be prevented and addressed in the future. But BFP's status as a news organization does not "render[] an award of attorney's fees *automatic.*" *Tax Analysts*, 965 F.2d at 1096 (courts have discretion "whether to award attorney's fees even to news organizations"). News organizations are not automatically entitled to attorney's fees when an award of fees does not serve as an incentive to encourage either the requesting party to seek the release of documents or the public agency to remove resistance to their release. See *id.*; cf. *Sampson*, 559 F.2d at 711 (FOIA's attorney's fee provision was not enacted to reward litigant who successfully forced government to disclose information, but rather to remove incentive for administrative resistance to disclosure based on knowledge that many FOIA plaintiffs do not have financial resources to engage in expensive litigation); *Kline*, 496 A.2d at 331 (given financial resources of requesting party, it seems unlikely that government agency withheld documents to create a financial barrier to their disclosure). But see *Chicago Tribune*, 70 F. Supp. 2d at 837 (newspaper stands in shoes of

innumerable private citizens and thus should not be denied attorney's fees merely because it is a financially strong entity).

More importantly, BFP's cover-up theory is inconsistent with the superior court's findings and conclusions in its decision on BFP's motion for a preliminary injunction. In reaching that decision, the court noted that UVM was "in something of a bind" because FERPA withholds federal funding from any educational institution that permits the release of personally identifiable educational student records without a court order or the consent of the student or a parent. See 1 V.S.A. § 317(c)(11) (term "public record" does not include student records at state educational institutions, "provided, however, that such records shall be made available upon request under the provisions of [FERPA]"). According to the court, any inclination on the part of UVM to release documents concerning the hazing allegations would have been chilled by FERPA. Indeed, the court concluded that, absent a court order requiring the release of the documents, the law was "insufficiently clear for UVM to run the risk of disclosure without resistance to [BFP's] lawsuit."

The court acknowledged that a 1998 amendment to FERPA allowed an educational institution to disclose "the final results of any disciplinary proceeding conducted by such institution against a student who is an alleged perpetrator of any crime of violence . . . or a nonforcible sex offense." 20 U.S.C. § 1232g(b)(6)(B). The court also acknowledged the complaining hockey player's federal lawsuit, filed only days earlier, alleged acts that would most likely be encompassed by the amendment. Nevertheless, the court concluded that "UVM has not, and probably cannot, respond voluntarily" to the request for release of the desired documents.

BFP has failed to undermine these findings and conclusions, which are contrary to BFP's view that UVM's refusal to release the documents was based on its desire to cover up the hazing scandal and avoid any public scrutiny of the potentially embarrassing and financially costly problem. Cf. *Dunwell v. University of Arizona*, 657 P.2d 917, 921 (Ariz. Ct. App. 1982) (affirming trial court's award of attorney's fees in public records case in which evidence disclosed that university officials declined to release information in attempt to "white wash" improper activities and stonewall investigation). Indeed, the court's findings and conclusions demonstrate its belief that UVM acted prudently in declining to release many of the requested documents unless and until a court order required that the documents be released. It is principally for this reason that the court declined to

award BFP attorney's fees. See *Chesapeake Bay Found.*, 11 F.3d at 216 ("although the test of entitlement involves a balance of several factors, there can be no doubt that a party is not entitled to fees if the Government's legal basis for withholding requested records is correct") (citation omitted); *Chicago Tribune*, 70 F. Supp. 2d at 836 (court must consider whether government had colorable basis for withholding documents; to find government's conduct reasonable, court need not ultimately determine that withheld information was, in fact, exempt); *Tax Analysts*, 965 F.2d at 1097 (factor examining reasonableness of refusal to disclose is intended to identify those cases in which government was recalcitrant in its opposition to valid request or was otherwise engaged in obdurate behavior).

■ In sum, our review of the superior court's orders in this case reveals that its denial of BFP's request for attorney's fees was based on several factors, including that (1) UVM's decision not to release many of the documents requested by BFP was not only reasonable, but advisable; (2) an attorney's fee award is not necessary in this case to remedy a situation in which the state agency delayed release of public documents in the hopes that the delay and ensuing litigation would create a financial barrier to those seeking the documents; and (3) some of the documents would have been released anyway because of the federal lawsuit filed by the complaining hockey player.

In considering these factors, we bear in mind that the "single most important element" is the discretion of the trial judge, who "has had a continuing relationship with the parties throughout the suit." *Sampson*, 559 F.2d at 705-06, 716 ("it is better to have . . . discretion exercised by the court which has been the most intimately associated with the case"); *Human Rights Comm'n v. LaBrie, Inc.*, 164 Vt. 237, 251, 668 A.2d 659, 669 (1995) (trial court is in best position to assess attorney's fee award, which must be based on particular facts of each case); cf. *Detroit Free Press*, 73 F.3d at 98-99 (where government had reasonable basis for declining release of documents, trial court's discretionary decision to deny attorney's fee award would be upheld, even though other factors weighed in favor of awarding newspaper attorney's fees). Considering the particular facts of this case, we cannot say that the trial court abused its discretion in declining to award attorney's fees to BFP.

*Affirmed.*