Ralph J. SOLONE and Virginia Solone, Plaintiffs,

v.

INTERNAL REVENUE SERVICE, Defendant.

No. 93 C 651.

United States District Court, N.D. Illinois, E.D.

Sept. 13, 1993.

Judith Irwin Gilliland, Robert E. McKenzie, Cary Richard Rosenthal, Ralph P. Bassett, McKenzie & McKenzie, P.C., Chicago, IL, for plaintiffs.

Lori Kathleen Miller, U.S. Attorney's Office, Chicago, IL, Gerald Alan Role, U.S. Dept. of Justice, Washington, DC, for defendant.

## *OPINION AND ORDER*

NORGLE, District Judge:

Before the court is the plaintiffs' application for attorneys' fees and costs. For the following reasons, the application is denied.

### DISCUSSION

The income taxes of plaintiffs Ralph J. Solone and Virginia Solone (the "Solones") were audited by the defendant Internal Revenue Service (the "IRS") for the period January 1, 1986 through December 17, 1989. This audit resulted in a reconstruction of income for the tax years 1987, 1988, and 1989. The reconstruction of income was based on gambling proceeds attributable to Mr. Solone, which were determined from the examination of betting slips acquired in a police search that coincided with the arrest of Mr. Solone for accepting wagers on sporting events.

Because the betting slips were the foundation of the IRS' calculation of the Solones' income, they are vital to the preparation of the Solones' case before the IRS. Accordingly, the Solones sent a letter to the IRS requesting that a copy of the Solones' tax file be released under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988). The IRS complied with the Solones' request, but withheld certain documents, including the betting slips, claiming that the release of those materials could disclose the identity of a confidential source. The Solones appealed the decision of the IRS not to release copies of the betting slips; the IRS, however, failed to respond to the appeal. Therefore, the Solones initiated the action *sub judice*.

▮ The Solones filed their complaint in this action on February 1, 1993, and subsequently filed a motion for *in camera* inspection of the betting slips. The IRS opposed the motion for *in camera* inspection, but nevertheless eventually released to the Solones the 147 pages of betting slips which were used as the basis for the calculations of the Solones restructured income. Because the Solones received the materials that they sought under FOIA, they now petition the court for attorney fees.

▮ In 1974, Congress amended FOIA to authorize attorneys fees for successful FOIA petitioners. Freedom of Information Act Amendments of 1974, Pub.L. No. 93–502, § 1(b)(2), 88 Stat. 1561 (codified at 5 U.S.C. § 552(a)(4)(E)). The Senate Report accompanying this legislation noted the importance of amendment:

> [The availability of judicial review is] crucial to effectuating the original congressional intent that judicial review be available to reverse agency refusals to adhere strictly to the Act's mandates. Too often the barriers presented by court costs and attorneys' fees are insurmountable for the average person requesting information, allowing the government to escape compliance with the law.

S.Rep. No. 854, 93d Cong., 2d Sess. 17 (1974) (hereinafter "Senate Report"). A necessary precondition to an award of litigation costs and attorneys' fees is that the plaintiff must "substantially prevail." *Stein v. Department of Justice & FBI*, 662 F.2d 1245, 1262 (7th Cir.1981). Although substantial prevalence is a prerequisite, it does not *ipso facto* require the award of FOIA attorneys' fees. *Cox v. United States Dept. of Justice*, 601 F.2d 1 (D.C.Cir.1979). The determination of entitlement under the FOIA is left to the discretion of the trial court. *Stein*, 662 F.2d at 1262; *Fenster v. Brown*, 617 F.2d 740, 742 (D.C.Cir.1979) (trial court must weigh facts of case against criteria of law on the award of attorneys' fees and then exercise its discretion in determining whether award is appropriate). In accordance with the congressional policy underlying the fee-recovery provision of FOIA, four criteria have been constructed to assist the court in exercising its discretion as to the award of attorneys' fees under FOIA: (1) "the benefit to the public, if any, derived from the case; (2) the commer-

cial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." *Stein*, 662 F.2d at 1262.

Two of these criteria, the commercial benefit to the complainant and the nature of the complainant's interest in the record, are closely related. When a complainant seeks disclosure of information to advance its private commercial interests, an award of fees is generally inappropriate. *Fenster*, 617 F.2d at 743. In such cases, "[t]he private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA." Senate Report at 17. The FOIA was enacted to provide information to the public and not to benefit private litigants. The Solones brought the instant suit to obtain information that would help them attack their IRS-restructured income calculations. On these facts, the private self-interest motive of the Solones is sufficient to insure the vindication of their rights under FOIA.

A third criterion for consideration, whether the government's withholding of the records had a reasonable basis in law, supports the denial of the Solones' fee petition. In general, the court will not award fees where the government's withholding had a colorable basis in law, but will ordinarily award them if the withholding appeared to be merely to avoid embarrassment or to frustrate the requester. Senate Report at 19. To satisfy the reasonable basis in law requirement, the court does not need to find that the information that the government chose to withhold was in fact exempt. *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365–66 (D.C.Cir.1977). The IRS withheld the Solones' betting slips pursuant to subsection (b)(7)(D) of FOIA, which exempts from disclosure records compiled for law enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source." Whenever governmental records are withheld, the burden of establishing their exemption from mandatory disclosure rests with the agency, 5 U.S.C. § 552(a)(3), and the FOIA exemptions are to be narrowly construed, *see Rose v. Department of Air Force*, 495 F.2d 261, 263 (2d Cir.1974), *affd.*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); nevertheless, in determining whether to award attorneys' fees, the court need only consider whether the withholding entity had a reasonable basis in law for nondisclosure. *Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704, 712 (D.C.Cir.1977). While the IRS' compliance with the Solones FOIA request was dilatory, there are no allegations that the IRS was seeking to avoid embarrassment or to harass the Solones. *See Simon v. United States*, 587 F.Supp. 1029, 1032 (D.D.C.1984) ("[W]ithout evidence of bad faith, the court declines to impose a fee award to sanction sluggish agency response"). Having asserted at least a colorable basis in law for its decision to withhold the Solones' betting slips, the IRS has supported its opposition to the award of attorneys' fees.

The only remaining criterion to be reviewed is the public benefit derived from the case. The legislative history of FOIA indicates that the "public benefit" criterion "speaks for an award [of attorneys' fees] where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir.1978). Because the IRS is threatening to assess the Solones with over $2,000,000 in taxes and penalties, the disclosure of the betting slips furthers the private commercial interest of the Solones, and does little if anything to increase the public knowledge of their government. The Solones, however, propose that awarding them fees will encourage the IRS to be "a little more cooperative in releasing documents. . . ." While the public would benefit from the court's imprimatur to the IRS to comply voluntarily with the provisions of the FOIA, this is not the type of benefit that FOIA attorneys' fees were intended to generate. *See e.g.*, Senate Report at 19 (under the public benefit criterion, "a court would ordinarily award fees, for example, where a newsman was seeking information to be used in a publication").

Applying the four criteria discussed above to the conduct of the IRS, the Court con-

cludes that an award of attorneys' fees to the Solones would be inappropriate. The betting slips requested were arguably subject to the subsection (b)(7)(D) exemption, and therefore, the IRS had a colorable argument for non-compliance with the Solones' request. Furthermore, the court has not been presented with any evidence that the IRS acted in bad faith, and the IRS' delay in producing the requested materials does not represent the kind of harassment or furtiveness deserving of the award of attorneys' fees as a deterrent or punishment. Because none of the four criteria tip the balance in the Solones' favor, the court declines to exercise its discretion to award the Solones attorneys' fees and the cost of filing their FOIA suit.

## CONCLUSION

For the foregoing reasons, the plaintiffs' fee application is denied.

IT IS SO ORDERED.