**CHICAGO TRIBUNE COMPANY, Plaintiff,**

v.

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, National Institute of Health, and National Cancer Institute, Defendants.**

**No. 95 CV 3917.**

United States District Court, N.D. Illinois, Eastern Division.

March 20, 1998.

Richard J. O'Brien, Eric Stephen Matt-son, Sidley & Austin, Chicago, IL, for Plaintiff.

Paula W. Render, Latham & Watkins, Chicago, IL, Arthur J. Howe, Schopf & Weiss, Chicago, IL, Victoria A. McEneney, Kurt J. Hamrock, McKenna & Cuneo, L.L.P., Washington, DC, for Intervenor.

Anthony James Masciopinto, U.S. Attorney's Office, Chicago, IL, for Defendant.

## ORDER

MANNING, District Judge.

In this Freedom of Information Act case, plaintiff Chicago Tribune Company seeks: (1) enforcement of the court's March 31, 1997 judgment in its favor, pursuant to Fed.R.Civ.P. 70; and (2) attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E). For the following reasons, the Tribune's motion to enforce is granted and its application for attorneys' fees is granted in part and denied in part. Specifically, the Tribune is awarded $97,210.21 in attorneys' fees and costs for work performed as of the date of the fee petition. If the Tribune wishes to supplement its petition for work performed subsequently, it may file a supplemental fee application and supporting affidavit within 21 days of the date of the entry of this order. The parties are reminded to confer regarding any such application, as required by General Rule 47.

## I. The Tribune's Motion to Enforce

The Tribune seeks to enforce the court's March 31, 1997 judgment in its favor, pursuant to Fed.R.Civ.P. 70. The government opposes this request, contending that the judgment requires them to produce certain records that it does not possess and has no right to obtain. The government also contends that its motions to reconsider and to stay enforcement of the judgment (which were recently denied) excuse its non-compliance with the court's judgment. Finally, the government objects to the Tribune's characterization of it as "delinquent" or "disobedient," contending that it was exercising its right to seek reconsideration of the court's ruling. See Fed.R.Civ.P. 70. In reply, the Tribune notes that the government failed to file timely objections to the magistrate judge's report and recommendation and that the judgment is enforceable under Fed. R.Civ.P. 62(a) as more than ten days have passed since its entry.

■ It is a fact beyond peradventure that a party who elects not to file timely objections to a magistrate judge's report and recommendations runs the risk that the court will not consider its objections when the party raises those objections later in another guise. That is exactly what has happened here. The government filed a motion for leave to file its objections to the report and recommendation two days after the final three week extension had passed. The court ultimately ruled that "[c]ourt ordered deadlines are non-negotiable" and denied the motion for reconsideration and for a stay of the judgment. The government cannot obtain "back door" consideration of their untimely objections by simply refiling them as a motion to reconsider.

Thus, the Tribune is entitled to enforcement of the judgment. If the government indeed cannot comply with the judgment, it may assert a defense of impossibility in the course of enforcement proceedings. The option of simply deciding not to comply with the court's orders, however, is not available. Accordingly, the Tribune's motion to enforce judgment [78–1] is granted.

## II. The Tribune's Motion for Attorneys' Fees

The Freedom of Information Act provides that the court "may assess against the United States reasonable attorneys' fees and other litigation costs in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(e). The Tribune seeks an award of $122,924.95 in attorneys' fees and costs. The government contends that the court should not award attorneys' fees and costs. Alternatively, it argues that the requested attorneys' fees and costs should be reduced by $11,691.87, if the court decides to award attorneys' fees and costs in the first instance.

■ In considering whether an award of attorneys' fees and costs under FOIA is appropriate, the court must first determine that the movant "substantially prevailed." *Stein v. Department of Justice,* 662 F.2d 1245, 1261–62 (7th Cir.1981). If so, the court must then consider, at a minimum: (1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law. *Id.*

The government concedes, correctly, that the Tribune substantially prevailed, given that the court adopted the magistrate judge's report and recommendation in favor of the Tribune and denied its motion to reconsider. It also concedes that the first three factors of the *Stein* test favor the Tribune. Nevertheless, the government contends that these factors do not weigh strongly in the Tribune's favor as it is a major metropolitan media outlet with a long-standing relationship with a large Chicago law firm. It also focuses on the last *Stein* factor, arguing that its position was reasonable and that it did not withhold the records for an improper purpose.

### A. Did the Tribune "Substantially Prevail"?

■ A party "substantially prevails" when the filing of its FOIA case in large part causes or induces the defendant to turn over the requested documents. *De-Bold v. Stimson,* 735 F.2d 1037, 1041 (7th Cir.1984); *Whalen v. Internal Revenue Service,* No. 92 CV 4841, 1993 WL 532506 *3 (N.D.Ill.Dec.20, 1993). Here, the Tribune easily qualifies as a "substantially prevailing" party because it is clear that the government would not have turned over the requested information without this lawsuit. Indeed, the government has not turned over the information as of this date, despite the fact that the court's judgment was not stayed and it was thus obligated to turn over the documents long ago. *See* Fed.R.Civ.P. 62(a). Thus, the court turns to whether, in its discretion, the Tribune should receive attorneys' fees and costs.

### B. The *Stein* Factors

The four factors set forth in *Stein* "reflect Congress' policy in enacting FOIA's fee provision to encourage persons who normally would find court costs and attorneys' fees prohibitive to bring actions to force governmental compliance with FOIA mandates ... and to promote 'more efficient, prompt, and full disclosure of information.'" *Whalen v. Internal Revenue Service,* 1993 WL 532506 at *3, *citing Solone v. Internal Revenue Service,* 830 F.Supp. 1141, 1142 (N.D.Ill.1993), and *quoting DeBold,* 735 F.2d at 1043. When a party "substantially prevails," the court may consider the *Stein* factors as well as any other factors it deems relevant to the question of whether the complainant should receive fees and costs. *Id.* at *5.

### 1. The Public Benefit, the Commercial Benefit to the Tribune, and the Nature of the Tribune's Interest in the Records

The first three factors—public benefit, the Tribune's commercial benefit, and the nature of the Tribune's interest in the records—are closely related and may be properly considered together. *See, e.g., Whalen v. Internal Revenue Service*, 1993 WL 532506 at *3. The public benefits from access to information about important and timely topics such as breast cancer research. Moreover, the benefit to the public is neither incidental nor secondary to the benefit to the Tribune, in light of the fact that the Tribune is a newspaper dedicated to disseminating information. *Cf. Solone*, 830 F.Supp. at 1142–43 (rejecting plaintiff's argument that disclosure of gambling slips used by the IRS to restructure his taxes served the public's interest by encouraging the government to cooperate in future FOIA suits).

With respect to the benefit to the Tribune and the nature of the Tribune's interest in the requested records, the court notes that the Tribune will obtain some commercial gain by selling newspapers based on a story of general public interest. Its primary goal, however, is "scholarly or public interest oriented." *Brainerd v. Dep't of the Navy*, No. 87 CV 4057, 1988 WL 37829 *2 (N.D.Ill. Apr.21, 1988). Moreover, the Tribune's receipt of the requested documents promotes the interests underlying FOIA, which was enacted to promote the dissemination of information to the public. *See Solone*, 830 F.Supp. at 1142–43, *quoting Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir.1978) (public benefit factors favor an award of fees "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices").

Thus, the first three *Stein* factors favor the Tribune. This brings the court to the final factor, which is stressed heavily by the government: whether the govern-

ment's withholding of the records had a reasonable basis in law.

### 2. Did the Government's Withholding of the Records Have a Reasonable Basis in Law?

■ In *Whalen*, the district court provided a thorough survey of the applicable case law interpreting the final *Stein* factor. Despite the passage of time, the *Whalen* court's explication of this factor is helpful, as only a limited number of courts have addressed this issue. Specifically, the *Whalen* court explained that a court must consider whether the government's withholding of the records was "reasonable" or "colorable," and that a court should not find that a colorable basis in law existed where the withholding appeared to be based on a desire to avoid embarrassment or to frustrate the requestor. *Whalen v. Internal Revenue Service*, 1993 WL 532506 at *3 (citations omitted).

To find that the government's decision to withhold documents was reasonable, the court need not ultimately determine that the withheld information was, in fact, exempt. *Id., citing Solone*, 830 F.Supp. at 1142–43. Moreover, when exercising its discretion with respect to the attorneys' fees issue, the court bears in mind that, when Congress amended FOIA to allow discretionary attorneys' fees awards, the accompanying Senate report noted:

> [it is] crucial to effectuating the original congressional intent that judicial review be available to reverse agency refusals to adhere strictly to the Act's mandates. Too often the barriers presented by court costs and attorneys' fees are insurmountable for the average person requesting information, allowing the government to escape compliance with the law.

*Stein*, 662 F.2d at 1262, *quoting* Senate Report No. 854, 93d Cong., 2d Sess. (1974).

■ Here, the government's withholding was neither unreasonable nor dilatory. The fact that the government's position was reasonable, however, is not dispositive.

When weighed against the remaining *Stein* factors, the scales tip in favor of awarding fees. First, an award of fees prevents the Tribune from being penalized for seeking out news of widespread public concern. Second, without the Tribune, the average citizen would not have obtained access to the requested information. Third, the dissemination of information of widespread public interest ensures the vindication of the rights provided by FOIA, especially where the request for information is not based solely on private self-interest. *Solone*, 830 F.Supp. at 1143, *citing* Senate Report at 17. An award of fees furthers the main purpose behind FOIA—to allow the public access to information. *See Solone*, 830 F.Supp. at 1143.

Courts are "warranted in awarding fees ... 'where a newsman was seeking information to be used in a publication,' or 'a public interest group was seeking information to further a project benefitting the general public.'" *Whalen*, 1993 WL 532506 at *5, *quoting Solone*, 830 F.Supp. at 1143, and *Brainerd v. Dep't of Navy*, No. 87 CV 4057, 1988 WL 37829 *2 n. 5 (N.D.Ill.1988). The overwhelming public interest in breast cancer research and the fact that information obtained by the Tribune will reach many people favor an award of fees.

Finally, the court is not persuaded by the government's argument that the Tribune should not receive fees because it is a large, financially strong entity. The Tribune is standing in the shoes of innumerable private citizens who lack the resources and energy to file a federal lawsuit to obtain the requested documents. It would be virtually impossible for an average citizen to litigate this FOIA case. The Tribune should not be punished by fighting that battle on behalf of the general public. *See Stein*, 662 F.2d at 1262 ("Too often the barriers presented by court costs and attorneys' fees are insurmountable for the average person requesting information, allowing the government to escape compliance with the law"). For these reasons, an award of attorneys' fees and costs to the Tribune is warranted.

## C. Assessment of Reasonable Attorneys' Fees and Costs

The Tribune seeks an award of $122,-924.95 in attorneys' fees and costs incurred by their lawyers, Sidley & Austin. This amount reflects a reduction due to Sidley & Austin's relationship with the Tribune, and reductions for work in connection with an unsuccessful motion to compel. The government asks that, if attorneys' fees and costs are awarded, that the requested attorneys' fees and costs should be reduced by $11,691.87. Thus, the government's position is that an award of $111,-233.08 is reasonable. The court cannot agree.

The Tribune bears the burden of proving the reasonableness of their attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Failure to document rates or the number of hours worked will lead to a reduction of the amount awarded. *See, e.g., American Security Mortgage v. Mercedes Benz of North America, Inc.*, No. 97 CV 4799, 1998 WL 70609 *1 (N.D.Ill. Feb.11, 1998). Determination of a proper fee begins with a calculation of the "lodestar," which is the number of hours reasonably expended multiplied by a reasonable hourly rate. *Id.*, *citing Eddleman v. Switchcraft, Inc.*, 965 F.2d 422, 424 (7th Cir.1992).

The court may then reduce or augment the lodestar based on:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (1) the "un-

desirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley,* 461 U.S. at 441, 103 S.Ct. 1933.

■ The Tribune's fee petition fails to adequately document the rates charged and the hours expended. With respect to rates, the Tribune has furnished a computer printout identifying individuals, who appear to be attorneys of varying levels of experience and paralegals, by name and rate. Different rates are listed for many of the individuals on the list. The court surmises that these rates reflect increases based on experience.

With respect to attorneys' fees, the Tribune lists:

| "Timekeeper" | Rate | Hours | Total |
| --- | --- | --- | --- |
| ME Moran | $75/hr | 4 | $300 |
| SI Pacifici | $75/hr | 1 | $75 |
| DT Labuz | $100/hr | 20.75 | $2,075 |
| AF Jordan | $65–$70/hr | .75 | $50 |
| RJ O'Brien | $275–$310/hr | 281.5 | $78,515 |
| DB Johnson | $280/hr | 1.75 | $490 |
| BA Sanders | $75/hr | .75 | $56.25 |
| R Chavers III | $65/hr | 1.75 | $113.75 |
| LJ Shroyer | $100–105/hr | 1.75 | $176.25 |
| MD Sneider | $285/hr | .50 | $142.50 |
| MS Bass | $200/hr | 3.25 | $650 |
| ES Mattson | $145–175/hr | 260.25 | $42,480 |
| TP Van Wazer | $230/hr | 13.75 | $3,162 |
| MG Smith | $60/hr | 3 | $180 |

The court does not know who these people are, why they are entitled to the claimed hourly rate, and why it was necessary for 14 attorneys and paralegals to be involved in a case that certainly was not overwhelmingly difficult or novel. Despite the government's failure to object to the lack of specificity in the affidavit supporting the fee petition, the court is not obligated to accept the rates and hours which are not the subject of an objection. With this in mind, the court turns to its examination of the fee petition.

More than 110 hours billed were spent all or in part in interoffice meetings or interoffice conferences or teleconferences. Many of these meetings and conferences are not described in any way. Moreover, where the attorney/paralegal performed more than one task in a given billed time period, it is impossible to ascertain how much time was spent on each task and, hence, whether that time was reasonable. *See American Security Mortgage,* 1998 WL 70609 *3 (the practice of "clumping" time entries is strongly discouraged). In addition, with respect to the many conferences and teleconferences, the times billed by the participating individuals do not necessarily correlate in any way. Finally, as noted above, the Tribune has failed to identify the attorneys and paralegals with the requisite specificity, so it is impossible to determine whether the interoffice meetings were necessary.

Many of the remaining time entries are "clumped," making it impossible to determine how much time was spent on any particular task. In addition, many of the descriptions of work performed are, at best, sketchy. The court recognizes that a certain amount of supervision and interaction is necessary. The court also recognizes that attorney-client privilege concerns often preclude a highly detailed description of the work performed. Nevertheless, the Tribune simply is not entitled to receive fees for work when the court cannot determine if the hours expended were necessary and reasonable.

The court begins with a base amount of $117,690.16 (billed time of $119,088.75 plus billed expenses of $13,383.29 for a total of $132,472.04, minus $14,781.88 pursuant to the Tribune's arrangement with Sidley & Austin). The court has carefully reviewed the affidavit supporting the fee application and the entire case file, and finds that the requested fees and costs should be reduced by $20,479.95.

The court has arrived at this amount by subtracting entries for time too vaguely described to support the time billed. *See Harper v. City of Chicago Heights,* Nos, 87 C 5112 & 88 C 9800, 1994 WL 710782 *4 (N.D.Ill.Dec.16, 1994) (deducting 70.1 hours because cursory and inexplicit time entries made it impossible to analyze

whether proper billing judgment had been used). The court has also disallowed time for unspecified interoffice meetings, and time spent where the court could not determine if the amount of time was reasonable based on "clumped" time entries.

The court thus disallows $8,387.50 for Mr. O'Brien (30.5 hours using his lowest hourly rate of $275/hour) and $290 for Mr. Mattson (2 hours using his lowest hourly rate of $145). The court also agrees with the government that 161.75 hours of attorney time, for a total of $34,303.75, is excessive and should be reduced by one-third, or $11,434.58. Based on its review of the pleadings filed in this case, the court is unpersuaded by the Tribune's argument that it already voluntarily reduced the amount of the fees charged for the summary judgment motion.

Turning to the requested costs, the court notes that the only documentation submitted by the Tribune is a computer printout listing expenses by date, amount, and a very brief description. The government challenges only certain meal expenses and a $49 witness fee. In response, the Tribune agrees to subtract $211.14 for meals in Chicago and the $49 witness fee. This leaves the court with a disputed meal charge of $107.73, described as "12/10/95 MLO 398724 RICHARD J O'BRIEN–CHGO/DC 12/5–6 $107.73 5726708." The government suggests that a per diem of $38 is more appropriate. In response, the Tribune states that the $107.73 covered meals for Mr. O'Brien and the Tribune's in-house counsel over two days. As the court has no documentation regarding this expense and the description in the expense report is cryptic, the court declines to assess any costs for this meal. *Harper v. City of Chicago Heights,* 1994 WL 710782 *5 (entries such as "meals" did not provide the court with a sound basis for evaluating the reasonableness of their expenditure). Thus, the court subtracts $367.87 ($107.73 + $211.14 + $49) from the total costs.

The Tribune bears the burden of any imprecision in the court's calculations as it was responsible for properly documenting its fee request. *Procter & Gamble Co. v. Weyerhaeuser Co.,* 711 F.Supp. 904, 905 (N.D.Ill.1989); *cf. Water Technologies Corp. v. Calco Ltd.,* 709 F.Supp. 821, 823 (N.D.Ill.1989). Moreover, the court notes that the general imprecision of the descriptions of the work performed and the lack of identification of the individuals who billed time made it very difficult to determine whether the claimed fees and costs were reasonable and whether the Tribune's counsel exercised proper billing judgment. These deficiencies preclude an award of attorneys' fees and costs in the amount requested despite the fact that the government did not object to many of the entries for fees and costs.

### III. Conclusion

Plaintiff Chicago Tribune Company's motion to enforce the court's March 31, 1997 judgment [78–1] is granted. It is ordered as follows:

Pursuant to the court's March 31, 1997 judgment, the defendants and any party acting in concert or privity with them are ordered to turn over to the Tribune the following records: (1) patient data forms without redaction of patient study numbers or any other information except the patients' names and social security numbers; (2) the records presented to the Data Resolution Panel as part of its decision-making process, with redactions only of the patients' names and social security numbers; (3) records reflecting the decisions of the Data Resolution Panel; and (4) the computerized Audit Reanalysis file. Counsel for the defendants shall file an affidavit with the court within ten days after the date of the entry of this order describing their compliance with this order.

The Tribune's motion for attorneys' fees and costs [71–1] is granted in part and denied in part. Specifically, the Tribune is awarded $97,210.21 in attorneys' fees and

costs for work performed as of the date of the fee petition. If the Tribune wishes to supplement its petition for work performed subsequently, it may file a supplemental fee application and supporting affidavit within 21 days of the date of the entry of this order. The parties are reminded to confer regarding any such application, as required by General Rule 47.